## John L. B. Young v. The Grand Lodge of The Sons of Progress, Appellant.

*Beneficial associations—Forfeiture of membership—Subordinate lodges.*

The constitution and by-laws of a beneficial association provided for a grand lodge and subordinate lodges. Each subordinate lodge was required to collect assessments from its members, and forward the amounts to the grand lodge. The fund thus collected was called the endowment fund, and was distributed to the widows and children of each member of the association upon the decease of the member in good standing. If a lodge became delinquent in its payments due to the grand lodge endow-

ment fund, it could be suspended at a special meeting of the grand lodge called for that purpose. This special meeting could only be called at the instance of the grand master upon the report of the committee of the endowment fund after such committee had investigated the matter by the examination of witnesses and papers. *Held*, that a widow of a deceased member of a delinquent subordinate lodge was entitled to payment out of the endowment fund, if the subordinate lodge had not been suspended in the manner provided by the constitution.

Argued Jan. 8, 1896. Appeal, No. 360, Jan. T., 1895, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1891, No. 119, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover death benefits.

The facts appear by the opinion of the court below.

At the trial the court charged as follows:

In this case you will find a verdict for the plaintiff. I will reserve the question of law for argument hereafter before the three judges.

The question reserved was: Whether under the constitution its member had any claim upon the endowment funds after the expiration of thirty days from July 8, 1891, there being no evidence of any forfeiture declared or found in pursuance of the constitution and by-laws of the association.

The court subsequently gave judgment for plaintiff on the question reserved, THAYER, P. J., filing the following opinion:

The plaintiff was a member of Harmony Lodge, No. 40, of an order called "Sons of Progress," consisting of a large number of confederated lodges, each with a constitution of its own, and each managing its business in subordination to and under the control of a supreme power called the "Grand Lodge of the Sons of Progress." The grand lodge is a representative body wherein all the subordinate lodges are represented, each lodge being entitled to at least one representative, lodges having sixty-seven members being entitled to two, and one additional representative for every additional thirty-three members. Past grand masters are also members of the body: Const. art. V. The grand lodge, which is an incorporated body, is, according to art. I. of its constitution, "the supreme executive power of the order." By the same article it has power to make laws for the

guidance of the order, to grant charters to new lodges, to sus-
pend or revoke the same, and to decide appeals coming up to
them, either from subordinate lodges or individual members
thereof. By article IX. the grand lodge has an additional func-
tion, which is to raise and dispense what is called an "endow-
ment fund." This fund is raised by an assessment of the
individual members of all the subordinate lodges, each subordi-
nate lodge being required to collect from its own members, and
to forward to the secretary of the grand lodge, the amount of
the assessment ordered by the grand lodge, whenever a death
happens of a member of the order. The fund thus collected is
appropriated by the grand lodge as follows: When a member
of the order in good standing dies, the sum of one thousand
dollars is, by the constitution, to be paid to his widow, orphans
or designated heirs. In like manner when the wife of a member
in good standing dies the husband is to be paid $500 out of the
endowment fund. To raise this fund, whenever a member of
the order dies, each subordinate lodge is assessed by the grand
lodge $1.00 for each member in good standing belonging to it,
and whenever the wife of a member in good standing dies each
subordinate lodge is assessed fifty cents for each member in good
standing belonging to it. Each subordinate lodge is required to
collect these assessments from its individual members and to
forward the amounts to the secretary of the grand lodge, who
transfers them to the hands of the treasurer of the grand lodge.
The treasurer then pays out of this fund to the individuals en-
titled, the amount due upon the happening of the death.

Thus it will be perceived the grand lodge is not only the
governing body of the order, and a court of appeals for each
subordinate lodge and every individual member thereof, but
they are also the trustees and dispensers of the endowment
fund. The subordinate lodges collect, each, their several dues
from their respective members, and pay out of their several
treasuries such sick benefits to their members as they may be
severally entitled to, under the by-laws of the lodge. Each
lodge being entitled to make its own by-laws upon that subject.
But the assessments made for the endowment fund are, as already
stated, collected from their several members upon the requisi-
tion of the grand lodge, and forwarded to the secretary of that
body. It will thus be seen, that by the constitution of the order,

each member of each lodge who pays his dues, and is in good standing, is not only entitled to receive sick benefits from his own lodge, but also to participate in the endowment fund held by the grand lodge, and the grand lodge accordingly issues a certificate to that effect to each member of the order (art. XI.).

The plaintiff in the present case is the holder of such a certificate. By it the grand lodge binds itself to pay out of the endowment fund to his wife, Sarah V. Young, $1,000 upon his death, "according to the provisions of the laws governing said fund," and it is admitted by the defendant that by virtue of § 4 of art. IX. of the constitution, they are bound to pay to the plaintiff out of the endowment fund $500 on the death of his wife, unless his right to such payment has been legally lost (although this is not stated in the certificate). It is for the recovery of this sum this suit is brought, the plaintiff's wife having died on August 28, 1891. The uncontradicted evidence on the trial showed that the plaintiff has paid his dues regularly to his lodge, and is in good standing, and that there are sufficient moneys in the endowment fund held by the grand lodge to pay the plaintiff's claim.

The defense made was that Harmony Lodge No. 40, to which plaintiff belonged, had neglected to pay into the grand lodge certain assessments made by the latter upon the lodge upon the occasion of certain deaths which had occurred among members of the order. Some of these defaults had occurred before the death of the plaintiff's wife, and the defendants contended that by reason of such defaults on the part of Harmony Lodge No. 40, the lodge and all its members, including the plaintiff, had forfeited all claims upon the endowment fund held by the grand lodge. On the other hand, it was stated by several witnesses examined for the plaintiff, that the officers of the grand lodge had condoned these defaults upon the part of the lodge, and had promised to indulge the lodge and give them time to pay up.

The defendant relied upon the provisions of § 9 of art. IX. of the constitution, relating to the endowment fund; § 9 declares that "lodges not complying with this law within thirty days from date of notice of the eath of a member, or a member's wife, shall forfeit their claim on the endowment fund, and shall be informed by the grand secretary that they will forfeit their charter thirty days days after the date of said notice, unless

immediately obedience be paid thereto, and the executive committee are empowered to take charge of the forfeited charter and effects of said lodge."

The defendant contended that Harmony Lodge No. 40 had incurred the penalties of this clause of the constitution, and that all its members, including the plaintiff, had thereby forfeited, ipso facto, all claim upon the endowment fund.

There are other clauses, however, of the constitution, as now appears, to which the attention of the court was not at all directed upon the trial, which are extremely pertinent to this question, and which have a most important bearing upon it. Section 13 of art. IX., which is to be read as if it were a part of § 9, as it relates to the very same object, provides, as a remedy for the defaults mentioned in § 9, for the suspension of the delinquent lodge from any participation in the endowment fund, and its reinstatement on payment of the amount due within thirty days of the suspension. By art. I. § 3 of the constitution, the power of suspension is expressly reserved to the grand lodge itself. The steps which precede the suspension of a delinquent lodge, and the manner in which it is brought about, are clearly pointed out in art. VII. of the constitution, § 5, which provides for a standing committee on the endowment fund consisting of seven numbers. When the grand master receives notice of the refusal of any lodge, for any cause, to pay the amount required by law as its share to an endowment, he is required to refer the matter to this committee, who are to examine witnesses, call for papers, and investigate the case, and they are provided with large powers for that purpose. They are then required to report the results of their inquiries, with all the evidence taken in the case, to the grand master, who is thereupon directed to convene a special meeting of the grand lodge " to take action " upon the report of the committee. Such an investigation and proceeding implies, of course, notice to the delinquent lodge to be put on trial, first, before the committee on the endowment fund, and afterwards before the grand lodge itself, at the meeting to which it is summoned by the grand master " to take action upon the case."

Upon the trial of this case, not a tittle of evidence was given by either side of any such proceedings to forfeit the rights of the members of Harmony Lodge No. 40, or their claims upon

the endowment fund.   The sections of the constitution, to which I have just alluded, were not even referred to by the learned counsel on either side of the case, and they have only been brought to my notice by a careful and deliberate reading of the whole constitution, since the trial was had.   Yet it must be evident to any one familiar with the rules of law upon this subject that claims upon the endowment fund by any member of any subordinate lodge could only be forfeited by a strict observance on the part of the grand lodge of the methods of procedure pointed out in their constitution, and not otherwise.

As I have already stated, there was not a particle of evidence given on the trial of any such proceedings as are required by the constitution as preliminary to a forfeiture.

The contest resolved itself on the trial into a question whether Harmony Lodge No. 40 had paid up its assessments or not, and if not, whether the officers of the grand lodge had forfeited the rights of the subordinate lodge, or had agreed to waive the forfeiture and to give them further time.   Whether there had ever been any real forfeiture by methods such as alone the constitution of the society recognizes, is a question which does not appear to have occurred to any one.   There was much desultory and contradictory evidence in regard to suspension and forfeiture, and in regard to what had been done or not done by the officers, but no evidence whatever was given to shed any light upon the question whether the grand master had ever reported. the lodge as a defaulting lodge to the committee of seven on the endowment fund, whether the committee of seven had ever instituted any examination, or had examined any witnesses, or given any notice, or made any report, or whether any special meeting of the grand lodge had ever been convened to "take action" upon the report, or had ever acted in the matter at all, and if so, in what manner, every one of which steps the constitution required to be taken, and every one of which it was necessary to prove before a forfeiture could be established.

Doubtless the position assumed by the defendant, that the right of the members of the lodges which constitute the order to participate in the endowment fund depends upon the compliance of the lodges to which they severally belong with the requirements of the constitution as to collecting and forwarding assessments, of which they are duly notified by the grand lodge,

is correct; for § 9 of art. IX expressly provides, that the claims· of a defaulting lodge upon the endowment fund, that is, of the members of a defaulting lodge (for the lodge as a lodge, in its collective capacity, can have no such claims), may be forfeited by a noncompliance by the lodge with the requirements of the constitution. The reason of the provision is, that the subordinate lodges are the instruments by which the treasury of the endowment fund is replenished, and by means of which alone the grand lodge is enabled to make good its undertaking to pay the members of the order the sum allotted to each by the constitution upon the occurrence of a death. If the lodges are careless or delinquent in collecting and forwarding to the grand lodge the assessments, the treasury of the endowment fund is crippled, and may be unable to meet the just demands made upon it. The object of the provision is evidently to impose upon the members of each subordinate lodge the duty of seeing that their officers comply with the requisitions for assessments made by the grand lodge. Hence, the claims of the members upon the endowment fund are made to depend upon the fidelity of the several lodges to which they belong, in obeying the requisitions of the grand lodge for assessments, and in promptly forwarding the proceeds. Being thoroughly understood by the members, it is neither an unjust nor an unwise provision. Each subordinate lodge is represented in the grand lodge, and they are severally protected by their representatives there from any unfair demand or any abuse of authority. But while it is clear that the rights of the members of the order, so far as regards the endowment fund, thus depend to a certain extent upon the fidelity and·good faith of the several lodges to which they belong, it is equally certain that their rights cannot be forfeited for the misconduct of their several lodges or their officers, unless those lodges are proceeded against in the manner pointed out by the constitution. The officers of the grand lodge have no right to forfeit any charter, or to suspend any lodge from the benefits of the endowment fund. That can only be done, for sufficient reasons, by a vote of the grand lodge itself, at a meeting regularly called by the grand master to review the report of the committee of seven, and to act upon it, agreeably to the constitution. These views, although clearly set forth in the articles of the constitution to which I have already

referred, seem to have been entirely lost sight of upon the trial, and the provisions of the constitution relating to them were not even adverted to. It is necessary, therefore, and only an equal measure of justice to both parties, that there shall be a new trial, the case having been tried on irrelevant issues. The real question in the case, viz, whether there ever was any actual suspension and forfeiture of the rights of the members of Harmony Lodge, No. 40, by the grand lodge itself, in accordance with the rules, formalities and methods laid down in the constitution—by which alone such suspension and forfeiture could have been lawfully effected—was not touched upon by either side, either in the evidence or upon the argument. It is necessary for the just determination of the rights of the parties in this case that the facts relating to this vital question in the case should be made to appear.

With the chart now laid down the cause of the parties upon the new trial ought to be a very plain and simple one, for it must be obvious from what has been said that the result must depend upon the ability of the defendant to show, by competent testimony, that the rights of Harmony Lodge No. 40 to participate in the endowment fund, were regularly suspended and forfeited in the manner pointed out by the constitution, and by a strict adherence to all the forms and provisions prescribed by that instrument. If they cannot show that, it is plain that the plaintiff must recover.

Rule for judgment absolute.

*Error assigned* was in entering judgment for plaintiff.

*Amos Briggs, Edward Willard* with him, for appellant.

*James Collins Jones, Lewin W. Barringer* with him, for appellee, cited: Diligent Fire Co. v. Com., 75 Pa. 291; Northwestern Traveling Men's Assn. v. Schauss, 148 Ill. 304.

PER CURIAM, January 20, 1896:

In this case, a verdict for plaintiff was taken subject to the following question of law reserved:

" Whether, under the constitution, its member had any claim upon the endowment funds after the expiration of thirty days

from July 8, 1891, there being no evidence of any forfeiture declared or found in pursuance of the constitution and by-laws of the association ? "

That question having been considered by the court in banc was resolved in favor of the plaintiff, and judgment against the defendant was accordingly entered on the verdict. We find nothing in the record that would justify us in sustaining any of the assignments of error; nor do we think that either of them requires special notice. The questions involved therein— so far as they are material—are sufficiently answered by the learned president of the court below in his clear and exhaustive opinion disposing of the reserved question, etc. We are quite content to adopt his construction of the constitution of the association; and we therefore affirm the judgment on his opinion.

Judgment affirmed.